**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

UNITED STATES OF AMERICA,

2005 MAR 10 P 1: 15

    Plaintiff.

U.S. DISTRICT COURT
DISTRICT OF MASS

v.

Case No. CR 04-486-RBC

SHAWN WINBUSH,

    Defendant.

---

## MOTION TO SUPPRESS EVIDENCE

---

    NOW COMES the Defendant Shawn Winbush by and through the undersigned Counsel, and submits this motion to suppress any and all evidence discovered as a result of the non-consensual x-ray of his person at Whidden Memorial Hospital in Everett, Massachusetts, in the early morning hours of October 7, 2004. The Defendant respectfully moves this Honorable Court for an Order suppressing all of said evidence, including any statements subsequently made, and for such other relief as justice may require, on the ground that reasonable suspicion did not exist to justify a non-consensual x-ray of the Defendant's person. The x-ray of the Defendant's person constituted a warrantless search in the absence of a reasonable suspicion or probable cause, and the evidence procured as a result of that illegal search must be suppressed.

    WHEREFORE, in consideration of the foregoing, as well as the facts and legal argument more fully set forth in the attached Memorandum of Law, Defendant Winbush requests that this Honorable Court grant his Motion to Suppress Evidence.

Respectfully submitted,


Lawrence P. Novak
Attorney for Defendant Winbush
235 Candy Lane
Brockton, MA 02301
(508) 581-8400


## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Motion to Suppress

and the attached Memorandum of Law have been served this 9th day of March, 2005

upon Nancy Rue, U.S. Attorney's Office, 1 Courthouse Way, Suite 9200, Boston,

Massachusetts, 02210.


Lawrence P. Novak
Attorney for Defendant Winbush

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS OFFICE

UNITED STATES OF AMERICA,

      Plaintiff.

v.

SHAWN WINBUSH,

      Defendant.

2005 MAR 10 P 1: 15

U.S. DISTRICT COURT
DISTRICT OF MASS

Case No. CR 04-486-RBC

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO SUPPRESS EVIDENCE

---

As a preliminary matter, the Defendant recognizes that the routine searches of persons and effects of entrants at this country's borders are not subject to any requirement of reasonable suspicion, probable cause, or warrant. United States v. Montoya de Hernandez, 473 U.S. 531, 537-38, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); United States v. Ramirez-Forrer, 82 F.3d 1131, 1143 (lst Cir. 1996). However, the x-ray search of the Defendant was in no way a "routine search" under this circuit's applicable jurisprudence. See United States v. Braks, 842 F 2d 509, 514 (1st Cir. 1988) ("a border search less intrusive than a strip search requires no level of suspicion on the part of custom officials...Thus every person crossing our border may be required to disclose the contents of his baggage, and of his vehicle, if he has one"). Non-routine border searches such as strip, body cavity, and x-ray searches require a reasonable suspicion of criminal activity. Id: United States v. Robles, 45 F.3d 1, 5 (lst Cir. 1995). To satisfy the reasonable suspicion standard, agents must "demonstrate some objective, articulable

facts that justify the intrusion as to the particular person and place searched. "United States v. Uroechea-Casallas. 946 F.2d162, 166 (lst Cir. 1991) (citing Braks, 842 F 2d at 513). Furthermore, counsel for the Defendant is not aware of any precedent from the First Circuit Court of Appeals holding that reasonable suspicion of alimentary canal smuggling may justify an involuntary x-ray.

The Fourth Amendment to the United States Constitution, which protects all Americans from unjustified governmental intrusion into their private lives, provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no warrants shall issue, but upon probable cause,* supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. Amend. IV (emphasis added). "The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Michigan v. Tyler, 436 U.S. 499, 504,98 S.Ct. 1942, 1947 (1978). Evidence seized in violation of the Fourth Amendment is excluded in both state and federal court. *See* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). If evidence is seized illegally by agents of law enforcement, the exclusionary rule will generally apply and any evidence obtained as a result of such a search will be barred from admission at a defendant's trial. The Supreme Court has held that even evidence indirectly obtained through an illegal search or an illegal arrest may be excludable "as fruit of the poisonous tree." Wong Sun v. United States, 371 U.S.471, 484-87, 83 S.Ct. 407, 415-17, 9 L.Ed.2d 441 (1963); *see also* Nardone v. United States, 308 U.S. 338, 341 (1939); Segura v. United States, 468 U.S. 796, 804 (1984). The *Wong Sun* Court stated quite clearly that:

> We need not hold that all evidence is fruit of the poisonous tree
> simply because it would not have come to light but for the illegal
> actions of police. Rather, the more apt question in such a case is
> whether, granting establishment of the primary illegality, the
> evidence to which instant objection is made has come at by
> exploitation of that primary illegality or instead by means
> sufficiently distinguishable to be purged of primary taint.

Id. At 487-88, 83 S.Ct. at 417-18.

Based on the insufficient reasons provided for the non-consensual x-ray in the

affidavit of Special Agent Eric LaForte of ICE, the x-ray constituted an illegal search.

Non-consensual x-rays for purposes of investigating alimentary canal smuggling are not

even authorized in this jurisdiction. Even if they were, Special Agent LaForte's stated

reasons for the x-ray do not support a reasonable suspicion of alimentary canal smuggling

to justify the non-consensual x-ray. Special Agent LaForte stated in his affidavit that the

non-consensual x-ray was ordered because Mr. Winbush was exhibiting symptoms of

cocaine poisoning, including dry lips, frequent use of lip balm, drinking large quantities

of water, burping frequently, profuse sweating and extreme agitation. While these may in

fact be symptoms of cocaine ingestion, they are also symptoms entirely consistent with

any other person in Mr. Winbush's situation who has done nothing illegal.

The dryness of his lips was attributable to his recent return from vacation at the

beach. The frequent use of lip balm was attributable to the dryness of his lips. Drinking

large quantities of water is indicative of nothing, other than being a health conscious

individual. Drinking large quantities of water keeps the body well hydrated, even after

several days in the hot Jamaican sun. It is also considered to be an excellent way to lose

weight, and one of the best methods for keeping your skin and most of the bodies other

vital organs as healthy as possible. The frequent burping was attributable to the drinking

of large quantities of water. Profuse sweating and extreme agitation are not surprising

things to see from a person who has been detained and is being interrogated at the U.S. border by customs agents who believe he is responsible for the importation of illegal narcotics. These facts simply do not constitute reasonable suspicion that Mr. Winbush was suffering the effects of cocaine ingestion resulting from alimentary canal smuggling. As a result, they did not provide Special Agent LaForte with sufficient reasonable suspicion to conduct a warrantless non-consensual x-ray/search of Mr. Winbush's person. It is further submitted that no amount of suspicion would justify an involuntary x-ray, as involuntary x-rays of a person for customs inspection purposes are not authorized in this jurisdiction. If a suspect does not consent to an x-ray, the proper procedure is to detain the suspect in a "dry cell" for as long as necessary to insure that his alimentary canal does not contain contraband. *See e.g.* United States v. Esieke, 940 F.2d 29 (2nd Cir. 1991); United States v. Adekunlo, 980 F.2d 985 (5th Cir. 1992).

Although agents of law enforcement do not have to advance prima facie proof of guilt of a particular crime, in cases of suspected alimentary canal smuggling at our nation's borders, that suspicion must be a reasonable one. United States v. Montoya de Hernandez, 473 U.S. at 541. Officials at the border must have a particularized and objective basis for suspecting the particular person of alimentary canal smuggling. Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981). Special Agent LaForte's affidavit is devoid of information that could amount to a reasonable suspicion that Mr. Winbush was smuggling contraband in his alimentary canal. All of this is in addition to the fact that the non-consensual x-ray was inappropriate in-and-of-itself. Thus, the warrantless non-consensual search of Mr. Winbush's body with the x-ray machine was completely unreasonable, and entirely illegal.

## CONCLUSION

Due to the illegal search of Mr. Winbush's body with the x-ray machine, any and all evidence procured as a direct and indirect result of that illegal search, including any subsequent statements made by Mr. Winbush, should be suppressed. Therefore, the Defendant respectfully requests that this Honorable Court issue an order suppressing the evidence, and for such other relief as justice may require.

Respectfully submitted,

Lawrence P. Novak
Attorney for Defendant Winbush
235 Candy Lane
Brockton, MA 02301
(508) 587-8400